# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   24MJ8869
Dark Blue Apple iPhone )
Model: 14 )
Seized as FP& F: 2024255200015302 Item: 0003 )

**FILED**
Oct 02 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:   10/02/2024

*Judge's signature*

City and state:   El Centro, California          HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:	Dark Blue Apple iPhone
Model: 14
Seized as FP& F: 2024255200015302 Item: 003
Seized from Marvin Alexander LINARES
(Target Device #2)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 30, 2024, up to and including September 30, 2024, and is limited to the following:

    a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device;

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Light Blue Apple iPhone
Model: 14
Seized as FP& F: 2024255200015302 Item: 002
Seized from Samuel Alfredo BECERRA
(Target Device #1)

**A-2:**  Dark Blue Apple iPhone
Model: 14
Seized as FP& F: 2024255200015302 Item: 003
Seized from Marvin Alexander LINARES
(Target Device #2)

**A-3**:  Blue Motorola Cellphone
Model: Moto G Pure
Seized as FP& F: 2024255200015301 Item: 002
Seized from Gloria RAMIREZ-Diaz
(Target Device #3)

**A-4:**  Blue Apple iPhone
Model: 13
Seized as FP& F: 2024255200015301 Item: 003
Seized from Ximena VILLEGAS-Ramos
(Target Device #4)

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Samuel BECERRA (BECERRA), Marvin Alexander LINARES (LINARES) and Gloria

1

RAMIREZ-Diaz (RAMIREZ) for transportation of illegal aliens Laura RAMOS-Torres (RAMOS) and Ximena VILLEGAS-Ramos (VILLEGAS) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from BECERRA, LINARES, RAMIREZ, and Material Witness VILLEGAS-Ramos on or about September 29, 2024, incident to the arrest of BECERRA, LINARES, RAMIREZ, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement

2

of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On September 29, 2024, Border Patrol Agents-Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #2 (ASU) were conducting surveillance in Calexico, California. At approximately 3:25 p.m., the Mobile Surveillance Capabilities (MSC) Operator observed two suspected illegal aliens walking north away from the United States/Mexico International Boundary Fence (IBF) towards Interstate 8. SBPA K. Hewson observed the two suspected illegal aliens as they approached Frontage Road, which is south of Interstate 9, and concealed themselves near the vehicle barricades that are located on the northside of Frontage Road. At this time, SBPA A. Mills positioned his unmarked Service vehicle in the eastbound lanes of Interstate 8, west of where ethe two suspected illegal aliens were hiding.

11. SBPA K. Hewson and SBPA A. Mills kept constant visual on the two suspected illegal aliens, later identified as Laura RAMOS-Torres and Ximena VILLEGAS-Ramos, and watched as they emerged from hiding, ran to the eastbound lanes of Interstate 8, ran across both the eastbound and westbound lanes of Interstate 8 and stood on the northside of the westbound lanes of Interstate 8. After approximately one minute, both SBPA K. Hewson and SPBA A. Mills watched as a lifted white Ford F-150 (Ford) bearing California license plates, pulled over and came to a complete stop. As the Ford came to a stop, both RAMOS and VILLEGAS ran to the Ford, opened the passenger door and entered the Ford. Once both RAMOS and VILLEGAS were in the Ford, the Ford merged back onto the westbound lanes of Interstate 8 and continued traveling westbound towards El Centro. At this time, ASU Agents positioned their unmarked service vehicles behind the Ford and initiated mobile surveillance on the Ford.

12. ASU Agents kept constant visual on the Ford as it travelled towards Brawley, stopped at a gas station, and then continued onto Highway 78. ASU Agents again kept

constant visual on the Ford as it utilized Highway 78 to travel into Palo Verde, stop at another gas station, and then continued northbound on Highway 78 towards Blythe. ASU Agents again kept constant visual on the Ford as it travelled north on Highway 78, and eventually merged onto the westbound lanes of Interstate 10. ASU Agents continued mobile surveillance on the Ford and kept constant visual on the Ford as I continued travelling westbound on Interstate 10 before exiting Interstate 10 and entered the city of Twentynine Palms. There, at that Ford stopped at a Circle K store and Agents observed as the Ford entered the parking lot and parked at the gas pumps. As the Ford parked, BPAs observed a gray Honda Civic, nearing California license plates, park on the opposite side of the gas pump. After the Honda parked, BPA T. Dones observed the driver of the Honda, later identified as BECERRA, walk to the Ford, briefly converse with the driver of the Ford, later identified as RAMIREZ, then stand there while passengers RAMOS and VILLEGAS exited the Ford. After RAMOS and VILLEGAS exited the Ford, BPA T. Dones watched as BECERRA ushered both RAMOS and VILLEGAS into the rear passenger seat of the Honda.

13. After RAMOS and VILLEGAS were inside of the Honda, BPA T. Dones watched as the Honda exited the parking lot and began travelling eastbound on Twentynine Palms Highway. As this time, BPA initiated mobile surveillance on the Honda and watched as it travelled east on Twentynine Palms Highway. After following the Honda for a period of time, BPA-I H. Torres activated the emergency light and siren of his unmarked Service vehicle to conduct a vehicle stop on the Honda and perform an immigration inspection on all occupants within the Honda.

14. After activating the emergency lights and siren, the Honda came to complete stop. ASU Agents approached the Honda with Border Patrol markings and insignia fully visible and identified themselves as BPAs to the driver (BECERRA), the front passenger, later identified as LINARES, and the rear passengers RAMOS and VILLEGAS. SBPA A. Mills questioned BECERRA as to his citizenship and BECERRA stated he was a United States Citizen. BPA-I L. Heipt questioned LINARES as to his citizenship and LINARES

6

stated he was a United States Citizen. SBPA A. Mills then questioned RAMOS and VILLEGAS as to their citizenship and RAMOS and VILLEGAS admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. BECERRA, LINARES, RAMIREZ, RAMOS and VILLEGAS were placed under arrest.

15. While SBPA A. Mills and BPA-I L. Heipt questioned the occupants of the Honda following the vehicle stop, BPA-I H. Torres approached the Ford after the Ford relocated to a different parking space in the Circle K parking lot. BPA-I H. Torres and BPA-I A. Botello approached the Ford with Border Patrol arkings and insignia fully visible and identified themselves as Border Patrol Agents to the driver, later identified as RAMIREZ. RAMIREZ stated she was a United States Citizen. At approximately 9:50 p.m., after RAMOS and VILLEGAS were determined to be in the United States illegally, RAMIREZ was placed under arrest.

16. At the Border Patrol Station, Material Witness RAMOS stated she is a citizen of Mexico. RAMOS stated she does not have any legal documents allowing her to live, work or remain in the United States legally. RAMOS stated her destination was Los Angeles, California. RAMOS stated she met an unknown smuggler in Mexicali and agreed to pay around $10,000 United States dollars once she successfully crosses into the United States illegally. RAMOS stated she and her daughter crossed the border fence and walked the desert until reaching a road. RAMOS stated once at the road a white truck stopped and picked them up with a female driving. RAMOS stated the female drove for a few hours before they got into the black car. RAMOS stated that they were then arrested.

17. Material Witness VILLEGAS stated she is a citizen of Mexico. VILLEGAS stated she does not have any legal documents allowing her to live, work or remain in the United States legally. VILLEGAS stated her destination was Los Angeles. VILLEGAS stated her mother made all arrangements to be smuggled into the United States. VILLEGAS stated they crossed the border fence and walked in the desert until reaching a road. VILLEGAS stated once at the road a white truck stopped and pick them up and a

female was driving. VILLEGAS stated the female drove for a few hours before they got into a black Honda Civic. VILLEGAS stated then they were arrested.

18.   During a search incident to arrest of BECERRA, LINARES, RAMIREZ and the Material Witnesses, four cellphones were found: an Apple iPhone (Target Device #1) was found by SBPA A. Mills on BECERRA's person and BECERRA claimed ownership of this cellphone. An Apple iPhone (Target Device #2) was found by BPA-I L. Heipt on LINARES' person and LINARES claimed ownership of this cellphone. A blue Motorola cellphone (Target Device #3) was found by BPA-I H. Torres on RAMIREZ's person and RAMIREZ claimed ownership of this cellphone. A blue Apple iPhone (Target Device #4) was found by BPA T. Dones on VILLEGAS' person and VILLEGAS claimed ownership of this cellphone. All cellphones were seized as evidence.

19.   I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on August 30, 2024, up to and including September 30, 2024, the day after the arrest of BECERRA, LINARES, RAMIREZ and the Material Witnesses.

## METHODOLOGY

20.   It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.   Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.   Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//

//

//

//

//

//

9

# CONCLUSION

23. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that BECERRA, LINARES, RAMIREZ, and Material Witness VILLEGAS used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by BECERRA, LINARES, RAMIREZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_Fernando Quiroz_
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 2nd day of October, 2024.

_____ 12:52 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**   Light Blue Apple iPhone
Model: 14
Seized as FP& F: 2024255200015302 Item: 002
Seized from Samuel Alfredo BECERRA
**(Target Device #1)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:	Dark Blue Apple iPhone
	Model: 14
	Seized as FP& F: 2024255200015302 Item: 003
	Seized from Marvin Alexander LINARES
	(Target Device #2)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-3:   Blue Motorola Cellphone
Model: Moto G Pure
Seized as FP& F: 2024255200015301 Item: 002
Seized from Gloria RAMIREZ-Diaz
(Target Device #3)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-4:              Blue Apple iPhone
                  Model: 13
                  Seized as FP& F: 2024255200015301 Item: 003
                  Seized from Ximena VILLEGAS-Ramos
                  (Target Device #4)




The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 30, 2024, up to and including September 30, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 30, 2024, up to and including September 30, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.